IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| OPULENT TREASURES, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00313-JRG |
| | § | |
| YA YA CREATIONS, INC., | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

Before the Court is Defendant Ya Ya Creations, Inc.'s ("YYC" or "Defendant") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (the "Motion"). (Dkt. No. 24). In the Motion, Defendant requests that the Court transfer the above-captioned case from this District ("EDTX") to the Central District of California ("CDCA") pursuant to 28 U.S.C. § 1404(a). Having considered the Motion, the relevant briefing, and the applicable law, the Court finds that the Motion should be and hereby is **GRANTED**.

**I.    BACKGROUND**

Plaintiff Opulent Treasures, Inc. ("Opulent" or "Plaintiff") filed its complaint against YYC on August 17, 2021, alleging that YYC's marking, distribution, and sale of certain home décor items (the "Accused Products") infringe, dilute, and misappropriate Opulent's registered and unregistered trademark and trade dress rights under the Lanham Act, the Texas Business and Commerce Code, and common law. (Dkt. No. 1 at ¶¶ 41, 52, 61, 68, 74, 80, 86, 92, 99, and 105). Opulent filed an amended complaint against YYC on December 23, 2021, expanding the number of Accused Products and trade dress at issue. (*See* Dkt. No. 19 at ¶ 41). YYC filed the instant

Motion one month later on January 20, 2022, requesting that the Court transfer this case to the CDCA. (Dkt. No. 24).

Plaintiff Opulent is a California corporation maintaining its principal place of business at 129 Lomita Street, El Segundo, California 90245 in the CDCA. (Dkt. No. 19 at ¶ 3; Dkt. No. 24-3). Defendant YYC is a California corporation headquartered and with its principal place of business at 13155 Railroad Avenue, City of Industry, California 91746 also in the CDCA. (Dkt. No. 19 at ¶ 4).

## II.   LEGAL STANDARD

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws." *Id*.

To support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current District. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The elevated burden to show that the transferee forum is "clearly more convenient" reflects the respect owed to the Plaintiff's choice of forum. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010).

## III.     DISCUSSION

As a preliminary matter, YYC asserts—and Opulent does not contest—that this case could have originally been filed in the CDCA because YYC is incorporated and headquartered in the CDCA and a trademark owner may file an infringement action in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b). Accordingly, the Court analyzes the private and public interest factors to determine whether YYC has met its burden of showing that the CDCA is clearly more convenient than the EDTX in this case.

### A.     The Relative Ease of Access to Sources of Proof

YYC argues that this factor weighs strongly in favor of transfer because both YYC and Opulent are California corporations with their principal places of business in the CDCA. (Dkt. No. 24 at 8; Dkt. No. 24-1 at ¶¶ 4–12; Dkt. No. 24-3). Accordingly, YYC asserts that all relevant physical evidence is located in the CDCA where the employees who designed, developed, and marketed the Accused Products work and where its documents are maintained. (Dkt. No. 24 at 8). YYC's CEO Michtell Su identifies "sample products as well as product labels and marketing materials for YYC [which] are located in the City of Industry" in the CDCA. (Dkt. 24-1 at ¶ 12). Specifically, the sample products include 20 different models of large physical cake stands and dessert platters, which YYC claims would be cumbersome to transport to Texas. (Dkt. No. 34 at 1–2; *see also* Dkt. No. 19 at 11–14). YYC further argues that Opulent's documents are also located in the CDCA and notes that Opulent has failed to identify specific documents or sources of proof in the EDTX. (Dkt. No. 24 at 8).

Opulent argues that this factor weighs against transfer because YYC fails to specify with particularity the identity, volume, and format (electronic or paper) of its documents or how the

documents would be used at trial. (Dkt. No. 32 at 3). Opulent notes that YYC has already produced sales figures and invoices, and thus transporting such documents to Marshall would not result in additional inconvenience. (*Id.* at 4 citing Dkt. No. 32-1). Further, Opulent argues that YYC admitted that it sells products to customers in this District, and therefore customers in the EDTX possess documents that are relevant sources of proof. (*Id.* at 4). Finally, Opulent argues that transporting large cake platters for trial in the EDTX will not be inconvenient because YYC ships its products to customers in Texas during the ordinary course of its business. (Dkt. No. 36 at 2).

The Court finds that YYC's arguments regarding the relative ease of access to sources of proof are more persuasive. The Court notes that both Plaintiff and Defendant have offices only in the CDCA and therefore have no documents at places of business in Texas or within the EDTX. While YYC only categorically identified documents located in the CDCA and has already produced some marketing data, Opulent fails to rebut YYC's showing that relevant documents are primarily in the CDCA. Even if such documents were electronic and could be easily accessed in the EDTX, the physical Accused Products—large decorative cake platters and tangible home décor items—are located in the CDCA and not in the EDTX. Further, Plaintiff has failed to identify any specific documents held by unnamed customers in this District and merely speculates that such exist. Accordingly, this factor weighs in favor of transfer.

      **B.**      **The Availability of Compulsory Process to Secure the Attendance of Witnesses**

YYC argues that this factor favors transfer by identifying several non-party witnesses subject to absolute subpoena power in the CDCA. (Dkt. No. 24 at 5). First, YYC identifies Tal Grinblat—the attorney who filed and prosecuted Opulent's U.S. Trademark Registration Nos. 5,912,235 on the Primary Register, and Nos. 4,729,341; 4,733,374; and 4,729,340 on the supplemental register—as a non-party witness who lives and works in the CDCA. (Dkt. No. 24 at

5; Dkt. No. 24-2 at ¶¶ 4, 5). While Opulent questions the relevance of Mr. Grinblat, YYC asserts that his testimony will be relevant regarding acquired distinctiveness and statements made during prosecution of the trademarks at issue. (Dkt. No. 24 at 5; Dkt. No. 24-2 at ¶ 4–5). YYC also notes that Mr. Grinblat submitted thirty-eight witness declarations in support of registration while prosecuting Opulent's U.S. Trademark Registration No. 5,912,235. (*Id.* at 6). YYC notes that fifteen of the declarations were made by non-party witnesses in the CDCA, identifies these witnesses by name, and states that their testimony will be relevant to the "direct consumer testimony" factor of proving secondary meaning at issue in the case. (Dkt. No. 34 at 3).

In response, Opulent argues that this factor weighs against transfer. Regarding Mr. Grinblat, Opulent notes that he is absent from YYC's initial disclosures and argues that YYC failed to sufficiently explain how Mr. Grinblat relates to any claim or defense.[1] (Dkt. No. 32 at 5). Opulent further argues that statements from Mr. Grinblat as a prosecuting attorney are irrelevant to whether its trademarks are invalid as lacking secondary meaning. (*Id.*) Instead, Opulent concedes that relevant "information is better sought from the [non-party] declarants themselves" and notes that two of such declarants "appear to possibly be located in the [EDTX]"—notwithstanding that fifteen specifically named declarants live in the CDCA. (*Id.* at 6; Dkt. No. 24 at 6; Dkt. No. 24-2 at ¶ 6). Finally, Opulent argues that YYC failed to show that Mr. Grinblat or the non-party declarants are unwilling witnesses that would require subpoena power and claims they are only potential witnesses at best. (Dkt. No. 32 at 6).

The Court finds that the availability of compulsory process factor favors transfer. First, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149,

---

[1] YYC responds that it will serve amended initial disclosures. (Dkt. 34 at 2).

2018 WL 4692486, at *3 n.3 (Fed. Cir. Sept. 25, 2018) (citing *AGIS Software*, 2018 WL 2329752, at *6). Accordingly, the Court considers the non-party individuals related to the trademark prosecution as unwilling witnesses unlikely, barring compulsion, to travel from the CDCA to the EDTX to assist the parties at trial. Given their location, the CDCA "has absolute subpoena power for [sixteen] witnesses that [Defendant lists specifically by name], and none of the witnesses . . . would be subject to absolute subpoena power in [the EDTX]. 'The fact that the transferee venue is a venue with useable subpoena power . . . weighs in favor of transfer, and not only slightly.'" *Diece-Lisa Indus., Inc. v. Disney Store USA, L.L.C.*, No. 212CV00400RWSRSP, 2020 WL 1332881, at *8 (E.D. Tex. Mar. 23, 2020) (quoting *In re Genentech, Inc.*, 556 F.3d 1388, 1345 (Fed. Cir. 2009)). Further, the Court finds Opulent's cited case law inapposite,[2] and accordingly finds YYC's arguments addressing this factor more persuasive.

### C. The Cost of Attendance for Willing Witnesses

YYC argues that this factor weighs strongly in favor of transfer because all of its employees with relevant knowledge and multiple non-party witnesses live in the CDCA and within a twenty-mile drive of the CDCA courthouse. (Dkt. No. 24 at 7). For example, YYC identifies Mitchell Su as an employee in the CDCA with information about the sale of the Accused Products. (Dkt. No. 24-1 at ¶ 13). YYC argues that the CDCA is more convenient for Plaintiff's employees as well—many of whom are identified by name and address in the CDCA on Opulent's corporate Statement of Information. (Dkt. No. 24-3).

Opulent argues that this factor weighs against transfer for several reasons. Plaintiff argues that this factor primarily concerns non-party witnesses, thus arguments that YYC's employees

---

[2] Although Opulent cites *Texas v. Google LLC*, there, the plaintiff identified 79 potential non-party witnesses within 100 miles of the EDTX court while, here, Opulent identifies none. Civ. No. 4:20-cv-00957-SDJ, 2021 WL 2043184, at *4 (E.D. Tex. May 20, 2021).

6

would be inconvenienced carry little weight. (Dkt. No. 32 at 7). For party witnesses, Plaintiff argues that Defendant's arguments concerning its employees are too vague, and further asserts that hotel prices in Marshall are cheaper than hotel prices in LA. (*Id.*). YYC replies that hotel prices are irrelevant because neither party would be required to make hotel reservations in the CDCA—where both parties are located less than thirty-two miles from each other and less than twenty miles from the CDCA Courthouse at 350 W. 1st Street, Los Angeles, CA 90012 (Dkt. No. 24 at 7; Dkt. No. 34 at 3).

The Court notes that Defendants attempt to use the Mr. Grinblat and the non-party declarants discussed above to justify transfer under this factor as well as under the compulsory process factor. (*See* Dkt. No. 24 at 5, 7). However, this Court has repeatedly observed that a party may not double-count witnesses for the purposes of both the second and third private interest factors. *See AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-CV-00513-JRG, 2018 WL 2329752, at *7 (E.D. Tex. May 23, 2018). Accordingly, the Court only considers the identified witnesses not addressed under the compulsory process factor—the employees of YYC and Opulent located in the CDCA.

While "the convenience of party witnesses is given little weight," such witnesses are the only witnesses presented in the parties' briefing that can be properly considered under this factor. *SEVEN Networks, LLC v. Google LLC*, No. 2:17-cv-00442-JRG, 2018 WL 4026760, at *9 (E.D. Tex. Aug. 15, 2018); (*See also* Dkt. No. 24 at 6–7; Dkt. No. 32 at 7). Both Opulent and YYC are located and operate in the CDCA. Accordingly, the Court finds that all party witnesses are likely located in the CDCA. "[A] substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of

7

Texas, . . . this factor [weighs] substantially in favor of transfer." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). This factor favors transfer.

### D. Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

Opulent notes that YYC does not address this factor in its Motion and argues that YYC has accordingly waived arguments related to this factor by addressing it for the first time in its reply. (Dkt. No. 36 at 3). Opulent further argues that this factor weighs against transfer. First, Opulent asserts that transfer is inconvenient because it has filed three co-pending suits in the EDTX and two co-pending suits in the Western District of Texas ("WDTX") asserting infringement of the same trademarks and trade dress against different defendants. (Dkt. No. 32 at 8). Opulent also argues that YYC was not "reasonably prompt" in requesting transfer because it filed the instant Motion five-months after the filing of the initial complaint. (*Id.*). Finally, Opulent argues that transfer would disrupt this case's scheduling Order. (*Id.*).

In its Response, YYC notes that the only one of the five co-pending cases is before this Court, and thus little judicial economy will be achieved by this Court retaining the case. (Dkt. No. 34 at 4).

The Court notes that only one co-pending case—Case No. 2:21-cv-00307—is before this Court. Two other co-pending cases are currently pending in the Sherman Division of the EDTX—Case Nos. 4:21-cv-00878 and 4:21-cv-00586—and the other two co-pending cases are outside this District. (*See Opulent Treasures, Inc. v. CV Imports LLC*, Civ. No. 6:21-cv-01079 (W.D. Tex. 2021); *Opulent Treasures, Inc. v. Wayfare, LLC et al.*, Civ. No. 6:22-cv-00027 (W.D. Tex. 2021)). Thus, only one other case involving the same trademark and trade dress is pending before this Court. Further, "this Court has explicitly explained that 'certain cases warn against

giving excessive weight' to consideration of co-pending cases in evaluating judicial economy under § 1404." *SEVEN Networks, LLC*, 2018 WL 4026760, at *12.

The Court also notes that Defendant moved to transfer in January of 2022—only one month after the filing of the Opulent's amended complaint and before any other substantive motions were filed. (*See* Dkt. No. 24). The Court notes that "when a movant delays in seeking transfer, and the court takes action in the case, such delay and judicial expenditure of resources may weigh against transfer. *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-cv-00456-JRG, 2018 WL 4620636, at *6 (E.D. Tex. May 22, 2018). However, here, the Court has taken relatively little action in this case, and Defendant sought transfer only one month after Plaintiff filed its amended complaint. The Court finds that this case is not one involving "convoluted procedural history and [trademark] ownership disputes" of which this Court has particularized knowledge. *See Calypso Wireless, Inc. v. T-Mobile USA, Inc.*, No. 2:08-CV-441-TJW-CE, 2010 WL 11469012, at *4 (E.D. Tex. Mar. 31, 2010). On balance, the Court finds that this factor is neutral.

### E.    The Administrative Difficulties Flowing from Court Congestion

Opulent notes that YYC merely states in a footnote of the Motion that this factor is neutral. (Dkt. No. 32 at 9). Opulent then argues that this factor weighs against transfer because the time to trial in the EDTX is 0.7 months faster than the time to trial in the CDCA. (*Id.*). Opulent also notes that the CDCA issued Order 22-002 suspending jury trials until February 28, 2022 and suggests that further suspensions might increase the time to trial in the CDCA. (*Id.*). Finally, Opulent argues that the CDCA has 14,285 cases pending, while the EDTX has 5,801 cases pending and is thus the less congested forum. (*Id.*).

YYC replies that a 0.7-month difference is not an appreciable difference in time to trial and that Opulent inappropriately speculates that the CDCA could potentially suspend jury trials in

9

the future to argue that this factor weighs against transfer. (Dkt. No. 34 at 5). YYC also argues that Opulent's citation to total case numbers is misleading because the CDCA has more judgeships—noting that there are 595 cases per judgeship in the CDCA versus 569 cases per judgeship in the EDTX. (*Id.*).

The Court finds—as it has previously found—that when "[t]here is no dispute that this District's time to trial is shorter than the [transferee District's] time to trial . . . this factor weighs against transfer." *Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, 2019 WL 6345191, at *6 (E.D. Tex. Nov. 27, 2019). However, when "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347. While this case would proceed to trial quicker in this District and this factor ultimately disfavors transfer, the Court recognizes that this factor is "the most speculative of the factors" and "should not alone outweigh th[e] other factors" when they are neutral. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021) (citing *id.*).

   F.  **The Local Interest in Having Localized Interests Decided at Home**

YYC argues that this factor weighs strongly in favor of transfer because Opulent is located in the CDCA and YYC has been headquartered in the CDCA since 2006. (Dkt. No. 24 at 9). Accordingly, YYC asserts that all relevant research and design decisions related to the trade dress and trademarks at issue occurred in the CDCA. (*Id.*). YYC further argues that the EDTX has no particularized interest in this case because sales of the Accused Products occur all over the country. (*Id.*). YYC contends that the Accused Products are purchasable from anywhere in the country, and thus their use nationwide does "not give rise to a substantial interest in any single venue." (*Id.*); *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

Opulent responds that this factor weighs against transfer because "[YYC] admits that it has conducted business with customers in Texas through its websites and has had the Accused Products shipped to Texas." (Dkt. No. 32 at 10; Dkt. No. 28 at ¶ 44). Opulent also notes that two of the thirty-eight declarants who submitted declarations during trademark prosecution "appear to possibly be located in the [EDTX]." (Dkt. No. 32 at 10). Opulent thus asserts that "[a]t best, this factor is neutral." (*Id.*).

The Court notes that both parties are corporations local to the CDCA and neither party contests that all research, design, marketing, and prosecution work for the trademarks and trade dress at issue occurred in the CDCA. The only ties Opulent relates to the EDTX are sales to unnamed Texans—despite sales occurring nationwide—and the fact that two prosecution declarants "appear to possibly be located in the [EDTX]." (*Id.*). Opulent has not identified these declarants or their location. "There is little doubt that [a] District has a local interest in the disposition of any case involving a resident corporate party." *Seven Networks, LLC*, 2018 WL 4026760, at *14. Here, both corporate parties are residents of the CDCA and have no Texas presence. Contrary to Opulent's assertion, "the nationwide sale of products is not a local interest" and the unconfirmed possible presence of two trademark declarants in this District does not outweigh the corporate residence of both parties in the CDCA. *Calypso Wireless, Inc.*, 2010 WL 11469012, at *4. Accordingly, the Court finds that this factor weighs in favor of transfer.

G. **The Familiarity of the Forum with the Law That Will Govern the Case**

Opulent again notes that YYC declares this factor neutral in a footnote of its Motion. (Dkt. No. 32 at 9). Opulent argues that by not stating the facts supporting this factor and merely declaring that this factor is neutral, YYC failed to carry its burden to show that transfer is "clearly more convenient." (Dkt. No. 32 at 10) (citing *Hammers v. Mayea-Chang*, No. 2:19-CV-00181-JRG,

2019 WL 6728446, at *5 (E.D. Tex. Dec. 11, 2019) (noting "courts may deny a request for transfer when the party seeking transfer fails to provide specific factual information which is necessary to evaluate the potential convenience gained by transfer"). Opulent further argues that this factor weighs against transfer because Opulent asserts five causes of action under Texas State law that this Court is better suited to adjudicate: (1) common law trade dress infringement, (2) trade dress dilution under Tex. Bus. & Com. Code § 16.103, (3) common law unfair competition, (4) unjust enrichment, and (5) common law misappropriation. (Dkt. No. 32 at 10).

YYC responds that "[a] trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'" *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799, 806 n.3 (Tex.App.—Austin 2001, pet. denied) (quoting *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex.App.—Houston [14th Dist.] 1992, no writ)). Further, YYC asserts that "[a]ny federal transferee court is presumed to be equally familiar with the underlying federal law." (Dkt. No. 34 at 5) (citing *Afiab v. Gonzalez*, 597 F. Supp. 2d 76, 83 (D.D.C. 2009)).

This Court has previously noted that "the need to apply a particular state's law may weigh in favor of or against transfer" and that its "familiarity with Texas law" could accordingly tilt this factor against transfer in certain cases. *See Calypso Wireless, Inc.*, 2010 WL 11469012, at *5. However, this Court has also found this factor neutral in a trademark case similar to the instant case—noting that where "Plaintiff asserts two federal causes of action under the Lanham Act and a third cause of action for unfair competition under Texas common law, . . . 'the Eastern District of Texas and the Central District of California are . . . equally familiar with and capable of applying the governing law.'" *Diece-Lisa Indus., Inc.*, 2020 WL 1332881, at *10. The majority of

Opulent's causes of action either arise under federal trademark law or heavily overlap with federal law and thus do not favor one federal forum over another. *See id.* In addition to these claims, Opulent also asserts a claim of trademark dilution under Tex. Bus. & Com. Code § 16.103. (Dkt. No. 1 at 23). YYC has not shown that a such a claim is similar to federal law, nor rebutted Opulent's assertion that this Court's familiarity with Texas law places it in a better position to adjudicate this claim than the federal court of a sister state. Accordingly, the Court finds that this factor weighs against transfer, if only slightly.[3]

### H. The Avoidance of Unnecessary Problems of Conflict of Laws

YYC asserts that this factor is neutral. (Dkt. No. 24 at 10 n.2). Opulent argues—without citation to authority—that this factor weighs against transfer because five of its causes of action arise under Texas law. (Dkt. No. 32 at 10).

The Court finds that this factor is neutral as neither party has identified any potential issues that could arise regarding conflicts of law. Plaintiff brings claims under the Lanham Act which will not be subject to conflict of law issues regardless of the federal forum that adjudicates them. Additionally, there is no assertion that the transferee court will decline to apply Texas law to the Texas state law claims. Given the scarcity of briefing and lack of any issues regarding the application of foreign law, the Court declines to weight this factor either in favor of or against transfer.

---

[3] While Defendant's argument related to this factor is scant, the Court finds Opulent's reliance on *Hammers v. Mayea-Chang* inapposite in the instant case. In *Hammers*, the movant-seeking-transfer failed to brief significant factual detail in a personal injury suit—such as where the underlying car crash occurred, where injuries were treated, and where witnesses were located—to such an extent that the Court could not practically weigh the transfer factors. 2019 WL 6728446, at *5. Here, the factual underpinnings of the complaint and briefing are clear, and the analysis of this factor is directed to the respective forums' familiarity with applying state law. Accordingly, the Court finds Plaintiff's citation to *Hammers* unpersuasive.

## IV.     CONCLUSION

The Court finds that (1) the relative ease of access to sources of proof factor favors transfer, (2) the availability of compulsory process factor favors transfer, (3) the cost of witness attendance factor favors transfer, (4) the other practical problems factor is neutral, (5) the court congestion factor weighs against transfer, (6) the local interest factor favors transfer, (7) the familiarity with governing law factor slightly weighs against transfer, and (8) the conflict of law factor is neutral.

The only factor to weigh against transfer is the court congestion factor, which "should not alone outweigh all of th[e] other factors." *In re Genentech*, 566 F.3d at 1347. The Court therefore finds that YYC has met its burden and that the Motion should be **GRANTED**. Accordingly, the Court **ORDERS** that the above-captioned case be transferred to the Central District of California.

**So ORDERED and SIGNED this 30th day of March, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE